UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTEN LEIGH MURPHY,

    Plaintiff,

v.                                                    Case No.  8:20-cv-1849-T-SPF

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed.

**I.    Procedural Background**

Plaintiff filed an application for SSI (Tr. 725-30).  The Commissioner denied Plaintiff's claim both initially and upon reconsideration (Tr. 587, 606).  Plaintiff then requested an administrative hearing (Tr. 623-25).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 38-63).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits (Tr. 21-29).  Subsequently, Plaintiff requested review from the Appeals Council,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021 and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

which the Appeals Council denied (Tr. 1-3).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1980, claimed disability beginning January 15, 2016 (Tr. 21).[2]  Plaintiff has a high school education and some college credits (Tr. 41).  She has no past relevant work experience (Tr. 42).  Plaintiff alleged disability due to bipolar disorder, fibromyalgia, arthritis, lupus, common variable immune deficiency (CVID), migraines, allergies, asthma, chronic fatigue syndrome (CFS), and gastritis (Tr. 744).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since December 6, 2016, her application date (Tr. 23).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: fibromyalgia, connective tissue disease, degenerative disc disease (DDD), migraines, asthma, obesity, anxiety, and depression (*Id.*).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with these limitations:

> [T]he claimant can lift 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours per day; and sit 6 hours per day.  The claimant should never climb ladders, rope[s], or scaffold[s]; and can occasionally climb ramp[s]/stairs, balance, stoop, kneel, crouch, and crawl.  The claimant can frequently reach, handle, finger, and feel; but must avoid wetness and humidity, loud noise, vibration, pulmonary irritants, temperature extremes, hazardous machinery and

---

[2] Although Plaintiff claims an onset date of January 15, 2016, the relevant period for her SSI claim is the month she filed her application (December 2016) through the date of the ALJ's decision (July 25, 2019).  *See* 20 C.F.R. §§ 416.330, 416.335.

2

> heights. In addition, the claimant can perform simple[,] routine[,] repetitive tasks such as unskilled work with an SVP of one or 2 and a GED reasoning level up to 3. The claimant can handle occasional and routine changes in work settings or duties; but cannot perform fast-paced production or quota-driven work, such as assembly lines. However, the claimant can have occasional interaction with the public, coworkers, supervisors; and can maintain attention and concentration for 2 hours at a time, but then requires a 10 minute break.

(Tr. 25). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 26).

The ALJ considered Plaintiff's noted impairments and the assessment of a vocational expert ("VE"). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform jobs existing in significant numbers in the national economy, such as marker/pricer and private sector mail clerk (Tr. 28). Accordingly, based on Plaintiff's age, education, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 29).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### IV.   Analysis

Plaintiff argues the ALJ did not articulate good cause to discount the opinions of Plaintiff's treating pain management doctor Robert Guirguis, D.O., of Tampa Pain Relief Center, and treating rheumatologist Gingie DeSilva, M.D., of Allergy & Rheumatology Associates. Plaintiff also argues the Appeals Council erred in denying her request for review and refusing to exhibit treatment records she submitted to the agency after the date of the ALJ's decision. The Commissioner responds that the ALJ properly discounted the opinions of Plaintiff's treating doctors, and the Appeals Council correctly concluded there was no reasonable probability the additional evidence would change the ALJ's decision.

*A. Drs. Guirguis and DeSilva*

Plaintiff contends the ALJ did not articulate good cause to discount the opinions of Drs. Guirguis and DeSilva. The Commissioner retorts that the ALJ's decision is supported by substantial evidence because these physicians did not explain the extreme limitations they

5

identified on Plaintiff's physical RFC questionnaires, and their records show her conditions had stabilized by 2019. The undersigned agrees with Plaintiff.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. § 416.927(a)(2)[3]). If a doctor's statement rises to the level of a "medical opinion," an ALJ must state with particularity the weight given to that opinion and the reasons therefor. *Id.* at 1179. In rendering this determination, the ALJ must consider: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's area of specialization. 20 C.F.R. § 416.927(c). While the ALJ is required to consider each of these factors, it is not mandatory that he explicitly address them in his decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).[4]

Rather, the ALJ must provide "good cause" for not affording a treating physician's medical opinion substantial weight. *Id.*; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Good cause exists where: (1) the treating physician's opinion was not

---

[3] Although these regulations have been amended effective March 27, 2017, the new regulations only apply to applications filed on or after that date. *See* 20 C.F.R. § 416.920c. Because the Plaintiff's application was filed in 2016, the older versions of the regulations apply here.

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Crawford*, 363 F.3d at 1159.  Moreover, the ALJ must clearly articulate these reasons when electing to discount the opinion of a treating physician. *Phillips*, 357 F.3d at 1241.  "If the ALJ fails to give at least great weight to the opinion of a treating physician, he must provide a sufficiently detailed analysis with examples to demonstrate why that opinion is discounted, and provide a rationale that will enable a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Berrios v. Colvin*, No. 14–23860–CIV, 2016 WL 5661634, at *10 (S.D. Fla. Sept. 30, 2016).  The failure to do so is reversible error. *Lewis*, 125 F.3d at 1440.

Here, the ALJ ran afoul of the treating physician rule.  Turning first to Dr. Guirguis's opinions, Plaintiff treated with him (and nurse practitioners under his supervision) approximately 40 times from February 2016 through December 2018 (Tr. 1317-1556).[5]  Dr. Guirguis's notes (standardized from appointment-to-appointment) record his treatment of Plaintiff's lumbar and cervical radiculopathy, spondylosis, fibromyalgia, headaches, and chronic pain (*Id.*).  He provided Plaintiff with medication management, over the course of his treatment prescribing and adjusting Plaintiff's dosages of (among other medications) Adderall, gabapentin, hydrocodone, morphine, Xanax, and oxycontin (*Id.*).  He administered to Plaintiff epidural steroid injections for back pain, Toradol injections (non-steroid injections

---

[5] Plaintiff was sometimes seen by nurse practitioners Robyn Aydecott, Uzoma Okafer, or Kimberly Jones, whose notes Dr. Guirguis or one of his physician partners reviewed and approved.  As explained below, Dr. Guirguis also treated Plaintiff monthly from December 2018 through July 2019 (Tr. 65-109), but those records were not before the ALJ.

7

for short term pain relief) for fibromyalgia symptoms, and he performed cervical radiofrequency ablations on both Plaintiff's left and right sides on numerous occasions (Tr. 1346-47, 1355-60, 1386-89, 1411-12, 1429-30, 1436-37, 1463-64, 1470-71, 1482-83). He conducted Plaintiff's nerve conduction and EMG studies and ordered lumbar and cervical MRIs (Tr. 1443-56).

Plaintiff reported to Dr. Guirguis that her back pain radiated to her thighs, calves, and feet. She characterized her pain as an "ache, burning, deep, discomforting, and stabbing." (Tr. 1438). Her pain was aggravated by changing positions, bending, jumping, lifting, and walking (*Id*.) She had constant neck pain that she said radiated to her head (*Id*.). Her physical exams revealed limited range of motion and tenderness in her lumbar and cervical spines. Plaintiff usually reported improved pain for about a week after a steroid injection, but the pain always returned. For example, in October 2016 (two months before Plaintiff applied for SSI), her pain was 10 out of 10 on the pain scale, and her cervicalgia was worsening (Tr. 1374). In February 2017, Dr. Guirguis wrote that Plaintiff "has failed conservative therapy" (Tr. 1395), and in April 2017, Ms. Aydelott assessed Plaintiff with chronic intractable pain (Tr. 1413).

In August 2017 and July 2019, Dr. Guirguis completed physical RFC questionnaires at Plaintiff's request (Tr. 1179-82, 1637). In his August 2017 questionnaire, Dr. Guirguis briefly summarized his treatment of Plaintiff and opined she could sit for five minutes at a time for a total of two hours in an eight-hour workday and stand for five minutes at a time for a total of two hours a day (Tr. 1179-82). She needed unscheduled 15-minute breaks every hour, could never lift any amount of weight, could not twist, stoop, crouch, or climb, and would miss four workdays per month due to her impairments. In his July 2019 questionnaire, Dr. Guirguis noted Plaintiff's diagnosis of lumbar and cervical radiculopathy, concluding that

8

her prognosis was poor (Tr. 1637). He opined Plaintiff could only walk for one or two blocks before needing to rest for 15 to 20 minutes, and she would need to recline regularly at work.[6]

The ALJ did not discuss Dr. Guirguis's treatment notes. Instead, he summarized Dr. Guirguis's two RFC questionnaires, assigning them "little weight as it does not appear that the claimant is receiving any form of treatment for [sic] this provider." (Tr. 27). This is incorrect – as noted above, Plaintiff had dozens of appointments with Dr. Guirguis's office – but the Commissioner insists it is technically accurate because Dr. Guirguis's last treatment note in the record before the ALJ was dated November 2018. So, the Commissioner argues, at the time of the ALJ's July 25, 2019 decision, it appeared to the ALJ that Plaintiff was not being treated by Dr. Guirguis anymore. The Commissioner points out that "Plaintiff submitted records showing that Dr. Guirguis treated Plaintiff between December 2018 and July 2019 *to the Appeals Council, not to the ALJ*." (Doc. 20 at 22) (emphasis in original).

This explanation falls short for a few reasons. First, Plaintiff informed the ALJ about Dr. Guirguis's additional treatment records on July 5, 2019, two weeks before the administrative hearing and three weeks before the ALJ's decision (Tr. 811-12).[7] So the ALJ was apprised of the fact of Plaintiff's continued treatment by Dr. Guirguis, even though the actual treatment records were not before him. Second, the Commissioner's rationale could

---

[6] On the form, Dr. Guirguis erroneously listed his treatment dates for Plaintiff as December 19, 2018, through June 3, 2019 (Tr. 1637).

[7] Plaintiff did not submit these records to the agency until August 5, 2019 (ten days after the ALJ's decision), so they were not properly before the ALJ (*see* Tr. 65-109). But Plaintiff's attorney notified the ALJ of Plaintiff's continued treatment: On July 8, 2019, seventeen days before the ALJ's decision, Plaintiff's attorney wrote to the ALJ that he had requested and was awaiting additional treatment notes from Drs. Guirguis and DeSilva and St. Petersburg General Hospital (Tr. 811-12). Nonetheless, at the hearing, Plaintiff's attorney stated to the ALJ, "I'm not going to ask you to hold the record open." (Tr. 39).

9

only apply to Dr. Guirguis's July 2019 RFC questionnaire; in August 2017, when Dr. Guirguis submitted his first RFC assessment, he was treating Plaintiff on at least a monthly basis, and those records were before the ALJ. Third, and most importantly, it is unclear from the ALJ's opinion whether he considered any of Plaintiff's treatment with Dr. Guirguis, because the ALJ does not refer to any of his records.

Unfortunately, the ALJ's consideration Dr. DeSilva's opinions confuses things even more. After discounting Dr. Guirguis's RFC questionnaires, the ALJ stated: "However, there are rheumatology treatment records at Exhibit 9F and 23F, yet even so the objective physical findings do not support the degree of [l]imitations of which the claimant's rheumatologist report." (Tr. 27). Exhibits 9F and 23F are Dr. DeSilva's treatment notes from thirteen appointments between April 2015 and May 2019 (five appointments during the relevant period) (Tr. 971-94, 1584-89, 1594-98). She treated Plaintiff for lupus, lumbar spondylosis, CVID, connective tissue disease, fibromyalgia, asthma, and high blood pressure (Tr. 971). But other than this general reference (Tr. 27), the ALJ does not discuss Dr. DeSilva's treatment of Plaintiff.

Dr. DeSilva consistently recorded Plaintiff's complaints of widespread chronic pain and fatigue that was worsening (Tr. 971-94, 1584-89, 1594-98). Plaintiff had joint pain, back pain, numbness, muscle weakness, and depression (*Id*.). Dr. DeSilva monitored Plaintiff's prescriptions for Xanax (for anxiety), gabapentin (for nerve pain), hydroxychloroquine (for lupus), lidocaine and morphine (for pain), topiramate (for migraines), and trazodone (for depression and anxiety), among others (*see* Tr. 991). The rheumatologist noted Plaintiff's monthly intravenous immunoglobulin therapy (IVIg) infusions to help boost her immune system, administered at St. Petersburg General Hospital since January 2016 (Tr. 992).

In February 2019, Plaintiff reported severe and diffuse pain and fatigue in her back and joints. Dr. DeSilva assessed her with fibromyalgia, undifferentiated connective tissue disease, cervical spondylosis without myelopathy, restless leg syndrome, CVID, lumbar spondylosis, and chronic fatigue (Tr. 1584-85). According to Dr. DeSilva in May 2019, Plaintiff was "unable to function due to her diffuse body pain." (Tr. 1597).

Dr. Silva completed physical RFC questionnaires in August 2017 (after treating Plaintiff for over a year), and July 2019. In August 2017, Dr. DeSilva mistakenly wrote that she had treated Plaintiff since 2010 (Tr. 1175). She listed Plaintiff's diagnoses of fibromyalgia, undifferentiated connective tissue disease, and CVID (*Id*.). Plaintiff had "multiple fibromyalgia tender points, joint tenderness on palpation, and decreased [range of motion]." (*Id*.). Dr. DeSilva opined Plaintiff could walk less than one block, sit for 45 minutes at a time, stand for 15 minutes at a time, would need to walk for five minutes every hour, and could stand and sit for less than a total of two hours in an eight-hour workday (Tr. 1176-77). Plaintiff could occasionally lift less than 10 pounds but could rarely lift more (*Id*.). She could rarely twist, stoop, or climb stairs and never climb ladders or crouch (*Id*.). She could use her hands, fingers, and arms for repetitive activity between 20 and 15 percent of an eight-hour workday (Tr. 1178). Plaintiff would be absent from work about four days per month and was incapable of even a low stress job (Tr. 1176).

Dr. DeSilva completed another RFC assessment in July 2019, shortly before Plaintiff's hearing (Tr. 1288-90). This second RFC is like the first (with minor variations) with the exception that Plaintiff would need to walk every 45 minutes for 15 minutes and could occasionally lift more than 10 pounds (rather than never). The percentage of time she could use her hands, fingers, and arms decreased to five. According to Dr. DeSilva, Plaintiff had

11

"significant physical and mental impairments that makes it almost impossible for [her] to be gainfully employed." (Tr. 1291).

The ALJ did not assign weight to Dr. DeSilva's opinions, other than to note the "objective physical findings do not support the degree of [l]imitations of which the claimant's rheumatologist report." (Tr. 27). Instead, the ALJ "accord[ed] great weight to the State agency consultant's findings that the claimant is capable of a reduced range of light work due to spine disorder, connective tissue disease, migraine, and asthma." (*Id*.). The ALJ stated: "[T]he most important key here is that the most recent treatment records from 2019 show [Plaintiff's] migraines, mild asthma, chronic pain syndrome, apparent [ADHD], gastritis, fibromyalgia, rheumatoid arthritis, etc. were stable on the claimant's treatment regimen (Exhibit 25F/8-10)." (*Id*.). Exhibit 25F, pages 8-10, are notes from Plaintiff's first appointment at Labrador Primary Care Center in February 2019 to establish herself as a new primary care patient (Tr. 1630-32). The physician assistant who saw Plaintiff at that visit recorded Plaintiff's impairments and noted for each whether she was treating with a specialist. If she was (be it her rheumatologist, psychiatrist, or endocrinologist), the PA wrote: "Stable on current treatment," and "request records." (Tr. 1631). Under these circumstances, this is not good cause to discount Drs. Guirguis and DeSilva's opinions.

Additionally, the ALJ stated that Plaintiff's RFC for light work "is not incongruent with the opinions by the claimant's treating providers, as far as their opinions are consistent with the record evidence." (*Id*.). This is circular agency-speak. Here, Drs. Guirguis and DeSilva's opinions *are* a large part the record evidence, and the ALJ did not even discuss them. A physician's opinion regarding Plaintiff's limitations cannot be discredited by simply saying it is not supported by the medical evidence of record without any further explanation.

12

*See Perez v. Comm'r of Soc. Sec.*, 625 F. App'x 408, 418 (11th Cir. 2015) (finding ALJ's reason for according the treating source opinion little weight, *i.e.*, the opinion was contradicted by the doctor's contemporaneous notes, was insufficient because "the ALJ did not identify any contradictions"); *Sherwood v. Berryhill*, No. 8:16-cv-2762-T-27AEP, 2018 WL 1341743, at *4-8 (M.D. Fla. Feb. 27, 2018); *Flentroy-Tennant v. Astrue*, No. 3:07-cv-101-J-TEM, 2008 WL 876961, at *8 (M.D. Fla. Mar. 27, 2008) ("An ALJ is required to build an accurate and logical bridge from the evidence to his or her conclusion."); *Berrios*, 2016 WL 5661634, at *10; *cf. Phillip*, 357 F.3d at 1240-41 (ALJ's rejection of treating physician's opinion was supported by substantial evidence where ALJ cited examples of inconsistencies with treatment notes and claimant's own admissions of what claimant could do).

Here, the Court is unable to determine whether the proper legal analysis has been conducted because no reasoning was provided by the ALJ for discounting Drs. Guirguis and DeSilva's opinions. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). Plaintiff has identified reversible error in that the ALJ failed to articulate good cause to support his decision to reject these opinions. *See Winschel*, 631 F.3d at 1178-79; *Phillips*, 357 F.3d at 1241. The ALJ's decision must be remanded on this ground.

B. *Appeals Council's Consideration of Additional Evidence*

Next, Plaintiff argues the Appeals Council erred by denying her request for review. Plaintiff submitted Dr. Guirguis's monthly treatment notes from December 2018 through July 2019 to the Appeals Council, but it found "this evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2). The undersigned does not discuss this issue because remand is appropriate for the ALJ to re-evaluate Plaintiff's

13

treating physicians' opinions.  On remand, however, the ALJ should consider all medical evidence of treatment Plaintiff received during the relevant period.

## V. Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is reversed.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

**ORDERED** in Tampa, Florida, on March 1, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE